**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LILLIAN JOYCE FOSTER AND ALPHONSO FOSTER,<br><br>          Plaintiffs,<br><br>     v.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>          Defendants. | No. 2:26-cv-01604-WLH-AJR<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

**I.**

**INTRODUCTION**

On February 17, 2026, Plaintiffs Lillian Joyce Foster ("Ms. Foster") and her son Alphonso Foster ("Mr. Foster") (collectively, "Plaintiffs"), proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 (the "Complaint") against the City of Los Angeles ("City"), the Los Angeles Police Department ("LAPD"), and Does 1 through 50 (collectively, "Defendants"), arising from events concerning nuisance-abatement proceedings, alleged gang-related investigations, and the demolition of residential property.  (Dkts. 1, 2, 8.)

## II.

## SUMMARY OF ALLEGATIONS IN THE COMPLAINT

Plaintiffs allege that beginning in approximately 2005, the City, LAPD, the City Attorney's Office, and unnamed municipal employees participated in a coordinated and racially discriminatory campaign to falsely characterize property located at 10330 Lou Dillon Ave., Los Angeles, CA 90002 (the "Lou Dillon property") as a gang headquarter and narcotics-manufacturing site in order to pursue nuisance-abatement proceedings and ultimately demolish the property. (Dkt. 1 at ¶¶ 1-6, 14-15.) According to Plaintiffs, from 2003 through 2008, the property functioned as a family residence and site for lawful nonprofit and community programming rather than criminal activity. (Id. at ¶¶ 16-21.)

Plaintiff Ms. Foster alleges that she owned the property at issue and suffered property loss and related harm arising from its demolition. (Id. at ¶ 7.) Plaintiff Mr. Foster alleges that he suffered arrest, detention, reputational injury, and related harm stemming from alleged law-enforcement actions involving the property and associated criminal proceedings. (Id. at ¶ 8.)

Plaintiffs allege that on February 6, 2008, the Los Angeles City Attorney initiated nuisance proceedings in Los Angeles County Superior Court, People v. Lillian Joyce Foster, Case No. BC385107, alleging that the property constituted a public nuisance based on purported gang-related activity. (Id. at ¶ 24.) Plaintiffs allege that the City recorded a *lis pendens* against the property,[1] but never prosecuted the action to judgment. (Id. at ¶ 25.) Plaintiffs allege that, notwithstanding the pending nuisance action, the City demolished the property in or around September 2009 without adequate notice, a meaningful hearing, or just compensation, and

---

[1] A *lis pendens*, or notice of pendency of action, is a recorded notice that an action affecting title to, or the right to possession of, real property is pending, thereby providing constructive notice to subsequent purchasers and encumbrancers that any interest acquired in the property is subject to the outcome of the litigation. See Cal. Code Civ. Proc. §§ 405.2, 405.24.

thereafter imposed demolition- and abatement-related liens through the Los Angeles Department of Building and Safety ("LADBS").  (Id. at ¶¶ 32, 44.)

According to Plaintiffs, the City ultimately abandoned the nuisance action and formally withdrew the *lis pendens* on August 17, 2012.  (Id. at ¶ 26.)  Plaintiffs further allege that, despite later withdrawing the *lis pendens*, the City had previously coerced Ms. Foster, who was elderly and unrepresented, into signing a "Stipulation for Entry of Judgment, Order of Abatement and Permanent Injunction" on March 27, 2008.  (Id. at ¶ 27.)  Plaintiffs contend that Ms. Foster did not voluntarily execute the stipulation but did so only after the City threatened with demolition of the property, criminal prosecution, liens, and eviction if she refused to sign.  (Id. at ¶ 28.)  Plaintiffs further allege that the stipulation required closure of the property, eviction of family members, and demolition if certain conditions were not satisfied.  (Id. at ¶ 29.)

Plaintiffs allege that City officials, LAPD officers, investigators, supervisors, and unnamed informants fabricated or exaggerated allegations that the property was connected to gang activity and PCP manufacturing despite allegedly contrary federal criminal records and nonprofit documentation.  (Id. at ¶¶ 14-24, 33-40.)  According to Plaintiffs, subsequent federal indictments and related proceedings established that PCP manufacturing occurred elsewhere and not at the Lou Dillon property.  (Id. at ¶¶ 33-37.)  Plaintiffs allege that the City nevertheless relied on false narratives, unverified informants, and intelligence generated through programs such as CLEAR, PHSI, and the Watts Gang Task Force to support nuisance proceedings and demolition efforts.  (Id. at ¶¶ 14-15, 48-51.)

Plaintiffs also allege that LAPD personnel and City officials retaliated against Plaintiffs and community advocates for engaging in community advocacy and criticism of gang injunctions and enforcement practices.  (Id. at ¶ 57.)  Plaintiffs contend that municipal policymakers ratified the allegedly unconstitutional conduct and that the City maintained policies, customs, and practices of racially

discriminatory nuisance-abatement enforcement and reliance on unverified gang intelligence.  (Id. at ¶¶ 45-51, 58-61.)

Finally, Plaintiffs allege that they did not discover the alleged falsity of Defendants' conduct until later litigation records, internal materials, and whistleblower-related information became available and therefore contend that delayed discovery and equitable tolling apply to their claims.  (Id. at ¶ 47.)

Based on these allegations, Plaintiffs assert six claims for relief:  procedural due process (Claim 1); substantive due process (Claim 2); First Amendment retaliation (Claim 3); municipal liability under Monell v. N.Y. City. Dep't of Soc. Servs., 436 U.S. 658 (1978) (Claim 4); (5) conspiracy to deprive civil rights under 42 U.S.C. § 1985(3) (Claim 5); and (6) an unconstitutional taking under the Fifth and Fourteenth Amendments (Claim 6).  (Id. at ¶¶ 52-67.)  Plaintiffs seek unspecified compensatory and punitive damages, declaratory relief, injunctive relief, and attorneys' fees.  (Id. at ¶¶ 68-71.)

### III.

### STANDARD OF DISMISSAL OF *PRO SE* COMPLAINT

Under Federal Rule of Civil Procedure 12(b)(6), a trial court may dismiss a claim *sua sponte* "where the claimant cannot possibly win relief."  Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987); see also Baker v. Dir., U.S. Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (*per curiam*) (adopting the Ninth Circuit's position in Omar and noting that such a *sua sponte* dismissal "is practical and fully consistent with plaintiff's rights and the efficient use of judicial resources").  The Court's authority in this regard includes *sua sponte* dismissal of claims against defendants who have not been served and defendants who have not yet answered or appeared.  See Abagnin v. AMVAC Chem. Corp., 545 F.3d 733, 742-43 (9th Cir. 2008); see also Reunion, Inc. v. F.A.A., 719 F. Supp. 2d 700, 701 n.1 (S.D. Miss. 2010) ("[T]he fact that [certain] defendants have not appeared and

4

filed a motion to dismiss is no bar to the court's consideration of dismissal of the claims against them for failure to state a claim upon which relief can be granted, given that a court may dismiss any complaint *sua sponte* for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).").

Moreover, when a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. See Karim-Panahi v. Los Angeles Police Dep't., 839 F.2d 621, 623 (9th Cir. 1988). In giving liberal interpretation to a *pro se* complaint, the court may not, however, supply essential elements of a claim that were not initially pled. See Pena v. Gardner, 976 F.2d 469, 471-72 (9th Cir. 1992). A court must give a *pro se* litigant leave to amend the complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." Karim-Panahi, 839 F.2d at 623 (internal quotation marks omitted). For the reasons discussed below, the Court has screened the Complaint and determined that it must be DISMISSED with leave to amend.

# IV.

## DISCUSSION

**A.    Plaintiffs' Federal Claims Appear Time-Barred.**

Plaintiffs' federal claims appear facially barred by the applicable statute of limitations. Federal courts apply the forum state's statute of limitations governing personal injury actions to claims brought under 42 U.S.C. § 1983. See Wallace v. Kato, 549 U.S. 384, 387 (2007); Lukovsky v. City & Cnty. of San Francisco, 535 F.3d 1044, 1048 (9th Cir. 2008). In California, the applicable limitations period is generally two years. See Cal. Civ. Proc. Code § 335.1; Canatella v. Van de Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007). Although state law supplies the applicable limitations period, federal law governs when a claim brought under Section 1983 accrues. See Lukovsky, 535 F.3d at 1048; Olsen v. Idaho Bd. of Med., 363 F.3d 916,

926 (9th Cir. 2004).  Under federal law, a Section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action. See Lukovsky, 535 F.3d at 1048.  Moreover, dismissal as untimely is appropriate "only when the running of the statute [of limitations] is apparent on the face of the complaint."  U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc., 720 F.3d 1174, 1178 (9th Cir. 2013) (quoting Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010)).

Here, the allegations underlying Plaintiffs' federal claims concern events that occurred primarily between approximately 2007 and 2012.  Plaintiffs allege that nuisance-abatement proceedings concerning the Lou Dillon property commenced in 2008, the City recorded a *lis pendens* against the property, Ms. Foster was coerced into executing a stipulation, the property was demolished in or around September 2009, demolition-and-abatement-related liens were then imposed, and the City ultimately withdrew the *lis pendens* in 2012.  (Dkt. 1 at ¶¶ 24, 26-32, 44.)  Plaintiffs further allege that during the same general period, Defendants falsely identified Mr. Foster as a gang member, subjected him to unlawful arrest and detention, retaliated against him, and violated his constitutional rights.  (Id. at ¶¶ 33-43, 47-61.) Nevertheless, Plaintiffs did not commence this action until February 17, 2026, approximately 14 to 19 years after the events giving rise to their claims allegedly occurred.  (Dkt. 1.)

Plaintiffs invoke the delayed discovery rule and appear to rely on principles of equitable tolling, alleging that they did not discover the alleged falsity of Defendants' conduct until later litigation, internal materials, and whistleblower-related information became available.  (Id. at ¶ 47.)  Although federal law governs the accrual of Section 1983 claims, the Ninth Circuit has recognized that the federal discovery rule and California's delayed discovery rule are functionally identical. Under both, the limitations period begins when the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the injury giving rise to the

claim.  See Gen. Bedding Corp. v. Echevarria, 947 F.2d 1395, 1397 n.2 (9th Cir. 1991) (the federal and California standards for when a statute of limitations period begins to run "are apparently identical, the period for each commencing when the plaintiff discovered or could have discovered the fraud with the exercise of reasonable diligence"); O'Connor v. Boeing N. Am., Inc., 311 F.3d 1139, 1147 (9th Cir. 2002) ("Under both federal and California law, the discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim.").  A plaintiff relying on delayed discovery must plead specific facts showing "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence."  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005) (internal quotation marks omitted).

Here, Plaintiffs' allegations are insufficient to invoke the delayed discovery rule.  Plaintiffs do not allege when they discovered the allegedly concealed facts, what those facts were with specificity, why those facts could not have been discovered earlier through the exercise of reasonable diligence, or how Defendants' alleged concealment prevented Plaintiffs from timely filing this action.  See Fox, 35 Cal. 4th at 808-09.  Rather, Plaintiffs allege only that they later obtained evidence through subsequent litigation, internal materials, and whistleblower-related information that purportedly demonstrated the falsity of Defendants' conduct.  (Dkt. 1 at ¶ 47.)  These allegations concern the later discovery of evidence supporting Plaintiffs' claims, not the discovery of the injuries themselves.  The delayed discovery rule, however, postpones accrual only until the plaintiff discovers, or reasonably should have discovered, the injury giving rise to the claim.  See Lukovsky, 535 F.3d at 1048; O'Connor, 311 F.3d at 1147.  The later discovery of additional evidence supporting an already-known injury does not delay accrual where the plaintiff was aware, or reasonably should have been aware, of the injury when it occurred.

This deficiency is particularly significant because the Complaint appears to

show that Plaintiffs knew, or at the very least had reason to know, of the injuries underlying their claims when the alleged events occurred. Specifically, Plaintiffs necessarily knew when the nuisance-abatement proceedings were initiated, when the *lis pendens* was recorded against the property, when Ms. Foster allegedly executed the challenged stipulation, when the property was demolished, when demolition-related liens were imposed, and when Mr. Foster was allegedly arrested, detained, and subjected to the alleged constitutional violations. (Dkt. 1 at ¶¶ 24, 27-32, 43-44.) Although Plaintiffs now allege that later litigation and newly discovered materials revealed additional evidence that Defendants' actions were alleged unlawful, Plaintiffs do not allege facts showing that they were unaware of the underlying injuries at the time those events occurred. (Id. at ¶ 47.) Indeed, the Complaint shows that Plaintiffs knew of the very events when they occurred that they now contend violated their constitutional rights. Thus, Plaintiffs' subsequent discovery of evidence allegedly corroborating those claims does not plausibly establish delayed accrual or otherwise render their claims timely. Accordingly, based on the allegations as currently pled, Plaintiffs' claims appear facially untimely.

## B.      The LAPD Is Not A Proper Defendant.

Plaintiffs name the LAPD as a defendant. (Dkt. 1 at 1-2.) Under California law, municipal police departments generally are not separate legal entities subject to suit under Section 1983. See United States v. Kama, 394 F.3d 1236, 1239-40 (9th Cir. 2005) (*per curiam*) ("Municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983."); Vance v. Cnty. of Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) ("The County is a proper defendant in a § 1983 claim, an agency of the County is not."). Rather, the LAPD is a department of the City of Los Angeles and lacks a separate legal entity apart from the City.

Accordingly, the LAPD is not a proper defendant in this action, and Plaintiffs' claims against the LAPD must be dismissed. As discussed further below, to the

extent Plaintiffs seek to assert municipal liability, any such claim must be asserted against the City of Los Angeles and must satisfy the requirements for municipal liability under Monell.

**C.      Plaintiffs Fail To Allege Personal Participation.**

To establish a civil rights violation under 42 U.S.C. § 1983, a plaintiff must show either the defendant's direct, personal participation in the constitutional violation, or some sufficient causal connection between the defendant's conduct and the alleged violation.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Starr v. Baca, 652 F.3d 1202, 1205-06 (9th Cir. 2011).  A defendant is liable under Section 1983 only if "culpable action, or inaction, is directly attributed to them."  Hines v. Youseff, 914 F.3d 1218, 1228 (9th Cir. 2019) (quoting Starr, 652 F.3d at 1205).

Here, although the Complaint identifies the City, the LAPD, and several individuals, including Officer Garcia, Officer Moreno, Sergeant Dummars, and various Doe defendants, Plaintiffs frequently attribute the alleged constitutional violations to "Defendants," "City actors," "LAPPD Internal Affairs and City Attorney personnel," "task-force members," "final policymakers," or other unidentified law enforcement personnel without alleging facts demonstrating which defendant personally committed which constitutional violation.  (See e.g., Dkt. 1 at ¶¶ 11, 14-15, 31, 38-40, 45-61.)  While Plaintiffs occasionally reference specific individuals, the Complaint does not clearly explain how each such individual personally participated in each of the constitutional claims asserted.  Instead, Plaintiffs frequently rely on generalized allegations that collectively attribute wrongdoing to multiple defendants.

For example, Plaintiffs broadly allege that Defendants fabricated gang-related intelligence, initiated unlawful nuisance-abatement proceedings, retaliated against Plaintiffs, coerced Ms. Foster in executing the stipulation, demolished the Lou Dillon property without due process, and otherwise deprived Plaintiffs of their constitutional rights.  (Id. at ¶¶ 15-29, 32, 44-61.)  However, the Complaint does not identify which

9

individual allegedly fabricated the gang-related information, who relied upon or disseminated that information, who purportedly coerced Ms. Foster into signing the stipulation, which defendant denied Plaintiffs notice or a meaningful opportunity to be heard before the demolition, who authorized or carried out the demolition of the property, or who approved or imposed the demolition- and abatement-related liens. (Id. at ¶¶ 27-29, 44-45, 51.)  Similarly, as for Mr. Foster's allegations, the Complaint does not identify which individual defendants personally participated in the alleged unlawful arrest, detention, retaliation, or other constitutional deprivations.  (Id. at ¶¶ 33-43, 57.)

Although Rule 8 requires only a short and plain statement of the claim, it nevertheless requires sufficient factual allegations to "give [each] defendant fair notice of what the . . . claim is and the grounds upon which it rests." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Plaintiffs' repeated references to "Defendants" and other collective groups, without identifying the specific conduct attributable to each defendant, are insufficient to satisfy this pleading standard or to state a plausible claim for relief under Section 1983.  See Iqbal, 556 U.S. at 678.

Accordingly, Plaintiffs fail to adequately allege personal participation in the alleged constitutional violations.  If Plaintiffs elect to amend, they must identify each defendant against whom a claim is asserted and allege facts demonstrating what the defendant personally did or failed to do, when the alleged conduct occurred, and how that conduct caused the constitutional injury allegedly suffered by each Plaintiff. Allegations referring collectively to "Defendants," "City actors," "final policymakers," or other generalized groups, without identifying the specific actions attributable to each defendant, are insufficient to state a claim under Section 1983.

**D.**    **Plaintiffs Fail To State A Procedural Due Process Claim (Claim One).**

Plaintiffs' first claim alleges that Defendants violated their procedural due process rights under the Fourteenth Amendment by depriving Plaintiff of their property without constitutionally adequate notice or a meaningful opportunity to be

10

heard.  (Dkt. 1 at ¶¶ 52-53.)

The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  To state a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must allege:  "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003).  The essential requirement of due process is that the government provide "notice and an opportunity to be heard at a meaningful time and in a meaningful manner" before the government deprives an individual of a protected interest.  Mathews v. Eldridge, 424 U.S. 319, 333 (1976).  At the same time, due process "is flexible and calls for such procedural protections as the particular situation demands."  Id. at 334 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972); see also Zinermon v. Burch, 494 U.S. 113, 127 (1990) ("Due process . . . is a flexible concept that varies with the particular situation.").

Here, the Complaint adequately alleges that Ms. Foster possessed a protected property interest in the Lou Dillon property and that the City ultimately deprived her of that interest through nuisance-abatement proceedings and the demolition of the property. (Dkt. 1 at ¶¶ 24-31, 44, 52-53.)  However, Plaintiffs fail to plausibly allege that the procedures employed were constitutionally inadequate.  To the contrary, the Complaint itself alleges that the City filed nuisance-abatement actions in the Los Angeles County Superior Court, recorded a *lis pendens* against the property, and that Ms. Foster executed a "Stipulation for Entry of Judgment, Order of Abatement and Permanent Injunction" resolving that action.  (Id. at ¶¶ 24-29.)  These allegations indicate that Plaintiffs received access to judicial process before the demolition of the property occurred.

Although Plaintiffs make the conclusory allegation that they were deprived of property and liberty "without constitutionally adequate notice, hearing, or

individualized findings," (id. at ¶ 53), and that they were denied a "meaningful hearing" to contest the City's allegations, (Id. at ¶ 32), the Complaint does not allege facts explaining why the procedures that were provided failed to satisfy the requirements of due process.  Plaintiffs do not identify what notice they allegedly failed to receive or what hearing or other procedure was denied.  Instead, Plaintiffs simply conclude that the process afforded was constitutionally deficient without alleging supporting facts.  Such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678; see also Yagman v. Garcetti, 852 F.3d 859, 863 (9th Cir. 2017).

Plaintiffs further allege that Ms. Foster was coerced into signing the stipulation only because Defendants threatened demolition of property, criminal prosecution, liens, and eviction.  (Dkt. 1 at ¶¶ 27-29.)  Even accepting those allegations as true, the Complaint does not allege facts explaining why the alleged coercion rendered the judicial proceedings constitutionally inadequate or why Plaintiffs could not challenge the stipulation or the nuisance-abatement proceedings through available judicial procedures.  Nor does the Complaint identify which defendant allegedly made the threats or personally prevented Plaintiffs from pursuing those procedures before the property was demolished.  Plaintiffs' allegations, as currently pled, amount to a disagreement with the outcome of the nuisance-abatement proceedings, not a plausible allegation that they were denied the process guaranteed by the Fourteenth Amendment.

Accordingly, Plaintiffs have not plausibly alleged that they were deprived of a protected property interest without constitutionally adequate procedural due process. If Plaintiffs elect to amend, Plaintiffs must allege facts identifying the procedures they actually received, explain why those procedures were constitutionally inadequate under the circumstances, and identify each defendant who personally participated in the alleged denial of due process.

**E.**      **Plaintiffs Fail To State A Substantive Due Process Claim (Claim Two).**

Plaintiffs' second claim alleges that Defendants violated their substantive due process rights by engaging in conduct that was "arbitrary, oppressive, and conscience-shocking." (Dkt. 1 at ¶¶ 54-55.)  The Due Process Clause of the Fourteenth Amendment protects individuals from certain arbitrary government action regardless of the fairness of the procedures employed.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998) ("[T]he touchstone of [substantive] due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness") (internal quotation marks and citations omitted).  To state a substantive due process claim, a plaintiff must allege that a state actor deprived him "of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'"  Corales v. Bennett, 567 F.3d 554, 568 (9th Cir. 2009) (quoting United States v. Salerno, 481 U.S. 739, 746 (1987)).

As a threshold matter, however, a substantive due process claim is unavailable where "a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior."  Lewis, 523 U.S. at 842 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  In such circumstances, the claim "must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  Lewis, 523 U.S. at 843 (internal quotation marks omitted); see also U.S. v. Lanier, 520 U.S. 259, 272 n.2 (1997).  In other words, substantive due process generally does not provide an independent basis for relief when the challenged conduct is governed by a more specific constitutional guarantee.

Here, the allegations supporting Claim Two are identical to those supporting Plaintiffs' procedural due process (Claim One), retaliation (Claim Three), and takings claim (Claim Six).  Specifically, Plaintiffs allege that Defendants deprived them of property through nuisance-abatement proceedings and demolition of the Lou

13

Dillon property, retaliated against them for protected activity, relied upon allegedly fabricated gang-related information, and otherwise violated their constitutional rights.  (Dkt. 1 ¶¶ 15-40, 55-56.)  Plaintiffs' allegations on the adequacy of the procedures employed before demolition are governed by the Fourteenth Amendment procedural due process, their allegations of retaliation are governed by the First Amendment, and their allegations that the demolition resulted in an unconstitutional taking are governed by the Fifth Amendment Takings Clause.  Because these more specific constitutional provisions directly address the government's conduct alleged in the Complaint, substantive due process does not provide an independent constitutional theory.  See Graham, 490 U.S. at 395; Lewis, 523 U.S. at 842-43.

Moreover, even assuming substantive due process were an available theory, Plaintiffs have not plausibly alleged conduct rising to the level of a substantive due process violation.  Although Plaintiffs characterize Defendants' conduct as "arbitrary, oppressive and conscience-shocking," (Dkt. 1 at ¶ 54), those characterizations are largely conclusory and unsupported by factual allegations showing the type of extreme governmental misconduct required to satisfy the demanding "shocks the conscience" standard.  See Lewis, 523 U.S. at 846-47.  Instead, the Complaint mainly alleges that Defendants relied on allegedly false gang-related information, initiated nuisance-abatement proceedings, recorded a *lis pendens*, obtained Ms. Foster's execution of a stipulated judgment, and ultimately demolished the Lou Dillon property.  (Dkt. 1 at ¶¶ 15-40.)  While Plaintiffs dispute the legality, factual basis, and motivation underlying those governmental actions, such allegations, without more, do not plausibly establish the type of arbitrary executive conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Lewis, 523 U.S. at 847 n.8.

Accordingly, Plaintiffs fail to state a claim for violation of substantive due process.  Because the Complaint challenges government conduct that is governed by more specific constitutional provisions and, in any event, fails to allege conscience-

shocking conduct sufficient to implicate substantive due process, Claim Two fails to state a claim for relief and should be dismissed.

## F. Plaintiffs Fail To State A First Amendment Retaliation Claim (Claim Three).

Plaintiffs' third claim alleges that Defendants retaliated against Plaintiffs for engaging in protected advocacy concerning gang injunctions, policing practices, and community organizing activities. (Dkt. 1 at ¶¶ 56-57.)

To state a viable First Amendment retaliation claim under Section 1983, a plaintiff must allege facts showing that: "(1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." Capp v. Cnty. of San Diego, 940 F.3d 1046, 1053 (9th Cir. 2019); see also O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016). To ultimately "prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." See Nieves v. Bartlett, 587 U.S. 391, 398 (2019) (internal quotation marks omitted).

Here, liberally construed, the Complaint alleges that Plaintiffs engaged in protected advocacy concerning gang injunctions, law enforcement practices, and community organizing activities. (Dkt. 1 at ¶¶ 38-40, 57.) Plaintiff further alleges that, in retaliation for those activities, Defendants pursued nuisance-abatement proceedings against the Lou Dillon property, falsely associated Mr. Foster with gang activity, recorded a *lis pendens* against the property, coerced Ms. Foster into signing a stipulation, demolished the property, and subjected Plaintiffs to adverse governmental action. (Id. at ¶¶ 24-44, 57.)

Even liberally construing the Complaint, however, Plaintiffs fail to allege sufficient facts to support a viable First Amendment retaliation claim. Although Plaintiffs conclude that Defendants acted with retaliatory motive, the Complaint does

not identify which defendant was aware of Plaintiffs' protected activities, when any defendant became aware of those activities, what facts support an inference that any defendant harbored retaliatory animus, or how Plaintiffs' protected advocacy was a substantial or motivating factor behind each alleged government misconduct. Instead, Plaintiffs rely primarily on the conclusory assertion that the challenged governmental actions were retaliatory, without factual allegations plausibly connecting those actions to any protected advocacy. Such conclusory allegations, without supporting factual matter, are insufficient to state a plausible First Amendment retaliation claim. See Twombly, 550 U.S. at 555 (a plaintiff must allege more than "labels and conclusions"); Iqbal, 556 U.S. at 678 (courts need not accept conclusory allegations unsupported by factual enhancement).

Moreover, the Complaint does not clearly distinguish which protected activities were undertaken by Ms. Foster and which were undertaken by Mr. Foster, nor does it explain how the challenged governmental actions were causally connected to the protected activity of each Plaintiff. Likewise, the Complaint does not allege facts demonstrating which defendant was responsible for each allegedly retaliatory act or how each defendant's conduct was substantially motivated by Plaintiffs' protected expression. Without factual allegations connecting a particular defendant's actions to a particular Plaintiff's protected activity, the Court cannot reasonably infer that any named defendant acted with a retaliatory motive.

Accordingly, Plaintiffs fail to state a First Amendment retaliation claim. If Plaintiffs elect to amend, they must identify the specific protected speech or expressive activity, identify the defendant or defendants who allegedly retaliated against each Plaintiff, describe the adverse action each defendant allegedly took, and allege facts plausibly demonstrating that the protected activity was a substantial or motivating factor behind each challenged action.

**G.    Plaintiffs Fail To State A Fifth Amendment Takings Claim (Claim Six).**

Plaintiffs' sixth claim alleges that Defendants violated the Takings Clause of

16

the Fifth Amendment by demolishing the Lou Dillon property without paying just compensation.  (Dkt. 1 at ¶¶ 64-65.)  The Takings Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V; see also Murr v. Wisconsin, 582 U.S. 383, 392 (2017). Although the Takings Clause requires compensation when the government takes private property for public use, not every governmental interference with property constitutes a compensable taking.  In particular, the government's exercise of its police powers, including nuisance abatement and demolition of dangerous or unlawful property, is generally not a taking for "public use" within the meaning of the Fifth Amendment.  See Bennis v. Michigan, 516 U.S. 442, 452 (1996) ("The government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."); AmeriSource Corp. v. U.S., 525 F.3d 1149, 1153 (Fed. Cir. 2008) ("The government's exercise of the police power is not a compensable taking."); Acadia Tech., Inc. v. U.S., 458 F.3d 1327, 1331 (Fed. Cir. 2006) ("When property has been . . . subjected to *in rem* forfeiture proceedings, such deprivations are not 'takings' which the owner is entitled to compensation.").

Here, Plaintiffs allege that the City demolished the Lou Dillon property pursuant to nuisance-abatement proceedings arising from alleged gang activity and other purported nuisance conditions at the property.  (Dkt. 1 at ¶¶ 24-32, 44.) Plaintiffs further allege that the nuisance allegations were false, fabricated, and discriminatorily enforced.  (Id. at ¶¶ 15-23, 33-40.)  Liberally construed, Plaintiffs challenge the legality of the City's decision to initiate nuisance-abatement proceedings and demolish the Lou Dillon property, rather than alleging that the City appropriated the property for public use without paying just compensation.

Even accepting Plaintiffs' factual allegations as true, the Complaint does not plausibly allege a compensable taking within the meaning of the Fifth Amendment.

17

Plaintiffs do not allege that Defendants appropriated the Lou Dillon property for public use through the government's power of eminent domain.  Rather, Plaintiffs allege that Defendants demolished the property pursuant to nuisance-abatement proceedings undertaken under the City's asserted police powers.  Whether Defendants properly exercised those powers is a separate question from whether the demolition constituted a compensable taking.  See Bennis, 516 U.S. at 452; AmeriSource, 525 F.3d at 1153.  If Defendants acted outside the scope of their lawful authority, relied on fabricated evidence, or otherwise unlawfully pursued nuisance-abatement proceedings, those allegations may implicate other constitutional theories addressed elsewhere in this Order, but they do not transform the alleged demolition into a taking for public use requiring just compensation under the Fifth Amendment.

Accordingly, Plaintiffs fail to state a plausible Takings Clause claim.  If Plaintiffs elect to amend, they must allege facts demonstrating that the challenged governmental action constituted a taking of private property for public use requiring just compensation under the Fifth Amendment, rather than an allegedly unlawful exercise of the government's police powers.

**H.    Plaintiffs Fail To State A Claim For Municipal Liability Under _Monell_ (Claim Four).**

Plaintiffs assert a claim for municipal liability against the City under Monell, alleging that the City maintained customs, policies, and practices of discriminatory nuisance-abatement enforcement, reliance on false gang intelligence, and retaliatory targeting of residents and activists.  (Dkt. 1 at ¶¶ 45-51, 58-61.)  Even if Plaintiffs have adequately alleged one or more underlying constitutional violations, the Complaint independently fails to state a claim for municipal liability.

A municipality may not be held liable under Section 1983 solely because it employs an alleged tortfeasor.  See Connick v. Thompson, 563 U.S. 51, 60 (2011); Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).  This means that the City of Los

18

Angeles cannot be sued simply because some employee allegedly violated Plaintiffs' constitutional rights.  Instead, the City of Los Angeles may be held liable **only if the alleged wrongdoing was committed pursuant to a municipal policy, custom, or usage**.  See Bd. of Cnty. Comm'r of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 402-04 (1997); Monell, 436 U.S. at 691; see also Horton by Horton v. City of Santa Monica, 915 F.3d 592, 603-04 (9th Cir. 2019) ("[M]unicipalities may be liable under § 1983 for constitutional injuries pursuant to . . . a pervasive practice or custom.").  In all events, the identified policy or custom must be the "moving force" behind the alleged constitutional violation.  See Brown, 520 U.S. at 400, 404.

A plaintiff seeking to impose liability on a municipality under Monell must allege facts showing that:  (1) the constitutional violation was the result of a governmental policy or a longstanding practice or custom; (2) the individual who committed the constitutional violation was an official with final policy-making authority; or (3) an official with final policy-making authority ratified the unconstitutional act.  See Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992).

Here, Plaintiffs fail to plausibly allege municipal liability.  Although the Complaint repeatedly references municipal "policies," "customs," "patterns," and "ratification," those allegations consist largely of legal conclusions unsupported by sufficient factual specificity.  (Dkt. 1 at ¶¶ 45-51, 58-61.)  Plaintiffs repeatedly assert that the City maintained unconstitutional practices involving nuisance-abatement proceedings, gang databases, intelligence gathering, and racially discriminatory enforcement.  (Id.)  However, the Complaint does not identify any formal municipal policy authorizing the alleged constitutional violations, describe the contents of such a policy, or allege facts showing how any official policy directed or caused the challenged conduct.

Nor do Plaintiffs plausibly allege a longstanding municipal custom or practice.  A municipal custom must be "so persistent and widespread that it constitutes a

19

permanent and well settled municipal policy," and cannot be based on "isolated or sporadic incidents." See Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996); Gordon v. Cnty. of Orange, 6 F.4th 961, 974 (9th Cir. 2021).  Here, Plaintiffs mainly rely on the circumstances surrounding their own property and their interactions with City officials.  Such allegations concerning a single course of events involving a single property do not plausibly establish the existence of a longstanding municipal custom or practice.

The Complaint likewise fails to support liability based on the actions of a final policymaker.  Plaintiffs do not identify any official with final policymaking authority who directed or approved the challenged conduct, nor do they allege facts showing knowing ratification.  Although Plaintiffs repeatedly use of the term "ratification," they do not allege facts showing that any final policymaker had actual knowledge of the alleged constitutional violations and made a deliberate choice to approve them.  Conclusory allegations of ratification are insufficient.  See Gillette, 979 F.2d at 1346-47 (explaining that municipal ratification requires "an official with final policy-making authority [to] ratif[y] a subordinate's unconstitutional decision or action and the basis for it."); see also Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999) (same).

Finally, Plaintiffs fail to plausibly allege that any municipal policy, custom, or decision by a final policymaker was the "moving force" behind the alleged constitutional injuries.  Although Plaintiffs repeatedly assert that City policies caused the challenged conduct, they do not identify any specific policy or custom that caused each alleged constitutional violation or plausibly explain how any such policy or custom resulted in Plaintiffs' alleged injuries.  Instead, Plaintiffs rely largely on conclusory assertions of municipal liability, which are insufficient to assert a Monell claim.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678.

Accordingly, Plaintiffs fail to state a claim for municipal liability under Monell.  If Plaintiffs elect to amend, they must identify the specific municipal policy,

longstanding custom or practice, or decision by a final policymaker that allegedly caused the constitutional violations, allege facts demonstrating the existence of that policy, custom, or decision, and plausibly explain how it was the moving force behind each alleged constitutional injury.

## I.     Plaintiffs Fail To State A Claim Under 42 U.S.C. § 1985(3) (Claim Five).

Plaintiffs also assert a conspiracy claim under 42 U.S.C. § 1985(3), alleging that Defendants conspired to deprive Plaintiffs of their constitutional rights by fabricating gang-related information, pursuing discriminatory nuisance-abatement proceedings, and engaging in racially discriminatory enforcement practices.  (Dkt. 1 at ¶¶ 22, 37, 39, 46, 48, 62-63.)  Section 1985 "is derived from the thirteenth amendment and covers all deprivations of equal protection of the laws and equal privileges and immunities under the laws, regardless of its source."  Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980).  Subsection three of the statute, the only potentially applicable provision here, prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws."  42 U.S.C. § 1985(3).  To state a claim under Section 1985(3), a plaintiff must show "(1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States."  Gillespie, 629 F.2d at 641 (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)); see also Mustafa v. Clark Cnty. Sch. Dist., 157 F.3d 1169, 1181 (9th Cir. 1998).

A Section 1985(3) claim "must allege facts to support the allegation that defendants conspired together.  A mere allegation of conspiracy without factual specificity is insufficient."  Karim-Panahi, 839 F.2d at 626.  Furthermore, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  Griffin, 403 U.S. at 102; see also RK

21

Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1056 (9th Cir. 2002) (plaintiffs under Section 1985(3) must show "that they are members of a class that the government has determined 'requires and warrant[s] special federal assistance in protecting their civil rights'" (quoting Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992))).  The plaintiff must show that "each participant [in the conspiracy] . . . at least share[s] the common objective of the conspiracy."  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989).

Here, Plaintiffs fail to plausibly allege a Section 1985(3) conspiracy claim.  Although Plaintiffs assert that Defendants coordinated their actions and collectively targeted Plaintiffs, the Complaint contains only conclusory allegations of conspiracy.  Specifically, Plaintiffs do not allege facts showing how or when any agreement was formed, which defendants entered into the alleged conspiracy, what common objective they agreed to accomplish, or what specific acts each alleged conspirator undertook in furtherance of that agreement.  Nor do Plaintiffs identify which defendant allegedly fabricated the gang-related information, initiated or directed the nuisance-abatement proceedings, or otherwise participated in the purported conspiracy.  Instead, Plaintiffs ask the Court to infer the existence of a conspiracy merely because multiple governmental actors allegedly participated in related events.  Such conclusory allegations are insufficient to plausibly allege an agreement under Section 1985(3).  See Karim-Panahi, 839 F.2d at 626.

Plaintiffs likewise fail to plausibly allege that the purported conspiracy was motivated by the requisite class-based, invidiously discriminatory animus.  Plaintiffs allege that Defendants falsely associated Mr. Foster with gang activity, selectively enforced nuisance-abatement laws, and targeted Plaintiffs because of their race.  (See, e.g., Dkt. 1 at ¶¶ 22, 37, 39, 46, 48, 62-63.)  However, those allegations are largely conclusory.  The Complaint does not allege specific facts showing that any identified defendant acted because of Plaintiffs' race, such as discriminatory statements, disparate treatment of similarly situated individuals outside Plaintiffs'

protected class, or other factual circumstances from which the Court could reasonably infer racial animus.  Instead, Plaintiffs assert that Defendants' actions were racially motivated without alleging sufficient supporting facts.  Such conclusory allegations are insufficient to state a plausible claim under Section 1985(3).  See Iqbal, 556 U.S. at 678; Griffin, 403 U.S. at 102.

Moreover, Plaintiffs have not plausibly alleged an underlying deprivation of a constitutional right sufficient to support a claim under Section 1985(3).  As discussed above, the Complaint fails to state viable claims for procedural due process, substantive due process, First Amendment retaliation, or an unconstitutional taking.  Because Plaintiffs have not plausibly alleged an underlying constitutional violation predicated on the same allegations, their Section 1985(3) conspiracy claim likewise fails.  See Caldeira v. Cnty. of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.").

Accordingly, Plaintiffs fail to state a claim under 42 U.S.C. § 1985(3).  If Plaintiffs elect to amend, they must allege specific facts demonstrating the existence of an agreement among identifiable defendants, identify the defendants who allegedly entered into the agreement, describe when and how the agreement was formed, identify the acts each defendant undertook in furtherance of the alleged conspiracy, explain which constitutional right the conspiracy allegedly sought to deprive Plaintiffs of, and allege facts plausibly demonstrating that the alleged conspiracy was motivated by class-based, invidiously discriminatory animus.

## V.

## ORDER

The Complaint is dismissed with leave to amend.  On or before **August 10, 2026**, Plaintiffs shall file a First Amended Complaint ("FAC") that attempts to remedy the defects identified above.  If Plaintiffs choose to file a FAC, it should bear

the docket number assigned to this case (2:26-cv-01604-WLH-AJR), be labeled "First Amended Complaint," and be complete and of itself without reference in any manner to the original Complaint or any other document (except any document that Plaintiffs choose to attach to the FAC as an exhibit).  Plaintiffs are encouraged to state their claims in simple language and provide only a brief statement of supporting facts, omitting facts that are not relevant.  Should Plaintiffs decide to file a FAC, they are encouraged to utilize the Pro Se 15 form complaint attached to this Order.

**Plaintiffs are explicitly cautioned that failure to timely file a FAC or correct the deficiencies described above may result in a recommendation that this action be dismissed with prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**  Plaintiffs are further advised that if they no longer wish to pursue this action, they may voluntarily dismiss the action by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1).  A form Notice of Dismissal is attached for Plaintiffs' convenience.

IT IS SO ORDERED.

DATED:  July 10, 2026

_____
HON. A. JOEL RICHLIN
UNITED STATES MAGISTRATE JUDGE

Attachments:
CV-09, Notice of Dismissal Pursuant to Federal Rules of Civil Procedure 41(a) or (c).
Pro Se 15, Complaint for Violation of Civil Rights (Non-Prisoner).